IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RODNEY PITTS, #362143               *
        Plaintiff,
    v.                                *    CIVIL ACTION NO. JKB-12-3241

CO II SCOTT                       *
CO II ROLLINS[1]
SGT. HOFFMAN                 *
        Defendants.
                               *****

MEMORANDUM

On November 5, 2012, this court received for filing a civil rights complaint filed by Rodney Pitts ("Pitts") seeking monetary damages against correctional officers for their "neglect" in allowing him to be assaulted by five other inmates at the Roxbury Correctional Institution ("RCI") on April 20, 2012. ECF No. 1 at p. 4. He claims that an officer left his post unattended and Sergeant Hoffman witnessed him being attacked by the inmates, but failed to intervene or call a Code 10-10 to alert all available officers. Pitts alleges that the officers neglected their duties and standard procedures, causing his "well-being to be jeopardized." *Id*.

On February 25, 2013, defendants filed a motion to dismiss or for summary judgment which has been treated as a motion for summary judgment. ECF No. 12. Pitts has filed two opposition responses and defendants have filed a reply. ECF Nos. 14-16. The undersigned has examined the record and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2011). For reasons to follow, defendants' motion will be granted.

Under Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[1]    The docket shall be amended to reflect the correct last name of this defendant.

>and the movant is entitled to judgment as a matter of law. The court
>should state on the record the reasons for granting or denying the
>motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

It is undisputed that on April 20, 2012, Sergeant Hoffman was the Officer in Charge ("OIC") of Housing Unit Two at RCI. ECF No. 12, Ex. 1 at Hoffman Decl., Ex. 2 at Rollins Decl. & Ex. 3 at Scott Decl. Correctional Officer Rollins was assigned to the control center and Correctional Officer Scott was assigned to the A-Tier. That morning Hoffman was watching D-Tier and Rollins was watching A-Tier from the control center. Scott was standing by the desk on A-Tier. At 9:45 p.m. an inmate began talking to Scott. He did not abandon his post or responsibilities while in Housing Unit Two. ECF No. 12, Exs. 1-3. Scott turned and spoke to the inmate with his back to the recreation hall. Rollins observed Pitts walk up the recreation hall stairs. *Id.*, Ex. 2. As Pitts reached the top of the stairs, Rollins witnessed five inmates, Alverio Dominquez, Kevin Concalves, Rojelio Ruiz, Jose Parada, and Misael Pena, approach Pitts and commence assaulting him as soon as they

2

reached him.  *Id*.  Rollins affirms that as soon as the assault commenced, he immediately informed Hoffman that a fight was taking place.  Hoffman turned towards A-Tier and witnessed the assault taking place.  Rollins and Hoffman stood up to respond to the assault.  Inmates in the recreation hall saw Rollins and Hoffman and stopped the assault on Pitts.  The inmates dispersed to the back of the top recreation hall.   After Scott observed Rollins staring into the A-Tier recreation hall, he turned towards the hall and saw Pitts running down the steps bleeding.  *Id*., Ex. 3.

Hoffman made a radio call for assistance from all available officers and provided the necessary information.  A Code 10-10 call was not made because there was no fight in progress-- the fight had ended upon Hoffman and Rollins standing up to respond.    *Id*., Exs. 1-3.  Hoffman and Rollins went down onto A-Tier and ordered Pitts to come down the steps.  Hoffman then handcuffed and escorted Pitts off the Tier and away from his assailants.  He was taken to the medical unit for treatment.  *Id*.  Scott affirms he secured the recreation hall to assist in handcuffing Pitts.  After securing Pitts, Scott and Hoffman exited the recreation hall to wait for a responding officer to help search inmates on the top recreation hall.  *Id*.  Approximately 15 officers arrived in response to the radio call for assistance.  *Id*.  The officers entered the recreation hall and removed the involved inmates, who were searched, handcuffed, and escorted to the dispensary.

Defendants maintain that prior to April 20, 2012, they had no prior knowledge of Pitts being threatened by or having difficulties with Dominquez, Concalves, Ruiz, Parada, or Pena, as they were not on Pitts's OBSCIS enemies list nor had they been made aware by Pitts or other RCI staff of any threats against Pitts. ECF No. 12, Exs. 1-3.

In response, Pitts notes what he calls "inconsistencies" in defendants' declarations regarding where he was located when he was ordered out of recreation hall, i.e., upstairs or downstairs.  ECF

3

Nos. 14 & 15.  He further argues that there is some question as to how long it took Hoffman to intervene in the fight and his injuries would not have been as bad if defendant had not failed to intervene.  ECF No. 15.  Defendants reply that the statements are not inconsistent or material in nature as they reflect defendants' observations regarding Pitts after the fight had concluded.  ECF No. 16.  They again assert that the assaultive conduct ended as soon as Rollins and Hoffman observed the incident and started to respond.  Defendants contend there are no video cameras in the housing unit wings and Pitts has failed to show how, even if defendant Scott was at his post in the master control area, this would have prevented the fight or given Scott advanced knowledge that the assault was going to occur.  *Id.*, Ex. 1 at Heerd Decl.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004);  *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).   Under Fourth Circuit law, liability under the *Farmer* standard requires two showings.  First, the evidence must show that the official in question subjectively recognized a substantial risk of harm.  It is not enough that the officers *should have* recognized it; they actually must have perceived the risk.  *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*.  As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official

actually *must have* recognized that his actions were insufficient.  *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001).  Further, to state a claim for damages, the inmate must show a serious physical injury.  *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).  A showing of mere negligence does not suffice to establish deliberate indifference.  *See Farmer,* 511 U.S. at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); *see also Daniels v. Williams,* 474 U.S. 327, 332–34 (1986).

Pitts has been called upon to rebut defendants' declarations and materials with his own verified documents to establish a genuine dispute of material fact.  He has failed to so do.  The parties agree that Pitts was assaulted by inmates and that Pitts was physically harmed by this spontaneous attack.  Pitts argues that the correctional officers did not timely respond to the assault when it occurred.  Defendants, however, affirm that the fight ended as soon as they stood up to respond to it.  In a prison setting, inmate-on-inmate confrontations are, lamentably, a daily occurrence as inmates engage in an unending struggle for position and power among themselves.  Pitts has failed to show that defendants knew of facts showing a threat specific to him.  Moreover, he cannot demonstrate that an inference of harm to him was in fact drawn or that the risk was obvious. *See Farmer,* 511 U.S. at 837, 843.  Therefore, viewed in the light most favorable to Pitts, the record shows no evidence that the defendants had knowledge of any substantial risk of harm to Pitts. Accordingly, Pitts's claims that defendants violated his Eighth Amendment rights fail as a matter of law.

For the aforementioned reasons, defendants' court-construed motion for summary judgment shall be granted.  A separate Order follows.

DATED this 3rd day of April, 2013.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge
